1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY DANIEL KIRRY,

                              Plaintiff,

    v.

TRACEY SCHNEIDER,

                            Defendant.

No. C14-5162 RBL-KLS

**REPORT AND RECOMMENDATION**
**Noted for:  June 27, 2014**

Before the Court is Defendant Tracey Schneider's Motion to Dismiss and Stay Discovery. Dkt. 11.  Mr. Kirry is a Washington State inmate currently housed at the Clallam Bay Corrections Center (CBCC).  Mr. Kirry filed this 42 U.S.C. § 1983 civil rights action against Tracey Schneider, the CBCC Mailroom sergeant.  Dkt. 6.  He alleges that Ms. Schneider refused to send out his legal mail because the mail was not in pre-franked envelopes.  Mr. Kirry seeks an order directing that his mail be sent, an explanation of why he never received a rejection notice or the return of his mail.  He claims that Ms. Schneider violated his First Amendment rights by not sending out his mail and following Department of Correction (DOC) procedures.  *Id.*

The undersigned recommends that Defendant Schneider's motion be granted, that Mr. Kirry's claims be dismissed with prejudice, and that all discovery be stayed pending the District Court's consideration of this Report and Recommendation and any objections.

REPORT AND RECOMMENDATION - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## STATEMENT OF FACTS

For the purposes of this motion, the allegations contained in Mr. Kirry's complaint (Dkt. 6) are accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In June 2013, Mr. Kirry attempted to send out 4 pieces of "legal mail" mail seven times (6-2-13, 6-4-13, 6-7-13, 6-10-13, 6-11-13, 6-12-13, 6-16-13) using non pre-franked envelopes.[1] Dkt. 6, p. 3.  Each time (except the last rejection on 6-16-13), the mail was rejected and returned to Mr. Kirry because he failed to use a pre-franked envelope.  Defendant Schneider returned the mail to Mr. Kirry informing him he needed to use pre-franked envelopes.  At the time of the mailings, Mr. Kirry contends that he had no money in his spendable account and no debt on his postage account and that he used a blank envelope with a postage transfer so that his mail could be sent.  *Id.*, p. 3.  Mr. Kirry states that he never received mail rejection notices for any of the returned mail and that his mail was not returned to him the last time his mail was rejected on June 16, 2013.  *Id.*, p. 4.

Mr. Kirry grieved the return of his mail.  Full copies of these grievances are attached to Defendant Schneider's motion.  Dkt. 11, Exhibit 1, Grievance No. 13540079; Exhibit 2, Grievance No. 13538875[2].  In his first grievance (No. 13538875), Mr. Kirry states that on June 3, 2012, he sent out 5 pieces of legal mail with 5 postage transfers.  The mail was returned to him on June 6, 2013, with notice that he must use a pre-franked envelope to send his mail.  He sent

---

[1] According to Defendant, pre-franked envelopes are envelopes containing a scanned version of a stamp indicating postage has been pre-paid.

[2] Under the incorporation by reference doctrine, a court may consider documents outside of the complaint if the document's contents are incorporated by reference in the complaint and the document's authenticity is not in question.  *Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010).  Mr. Kirry incorporated his grievances by reference and attaches portions, but does not attach full copies of his grievances.  Attached as Exhibits 1 and 2 to Defendant's motion are complete copies of Grievance No. 13540079 (Exhibit 1, Dkt. 11-1, pp. 2-5) and Grievance No. 13538875 (Exhibit 2, Dkt. 11-1, pp. 7-10), which include each level of appeal and DOC responses received by Mr. Kirry.

REPORT AND RECOMMENDATION - 2

the mail again on June 7, 2013, and received the same notice.   Dkt. 11-1, Exhibit 2, p. 7.[3]  He

was advised in the response to his grievance that "[i]n accordance with DOC 450.100; Offenders

will purchase 'pre-franked' envelopes at cost from the facility's offender store."  He was also

provided with a copy of Policy 450.100.  *Id.*  In his Level 1 appeal of Grievance No. 13538875,

Mr. Kirry stated that DOC Policy 450.100 does not prevent offenders from using blank

envelopes with postage transfers to send out legal mail and offenders are allowed to incur a

postage debt for outgoing mail.  *Id.*, p. 8.  He was told that indigent offenders may incur a debt

for postage but must purchase pre-franked envelopes for their mail.  In addition, an investigation

revealed that Mr. Kirry did not meet the criteria for indigent status (less than a $10.00 balance of

disposable income 30 days previous to the request) at the time of the mailings in question.  *Id.*

He was also advised that regardless of his indigent status, pre-franked envelopes could have been

obtained and utilized for his mail.  *Id.*, pp. 8-9.

In his second grievance (No. 13540079), Mr. Kirry complained that he did not receive a

rejection notice for the 5 pieces of mail which were not sent out on June 17, 2013 and his mail

had not been returned to him.  Dkt. 11, Exhibit 1, p. 2.  He was told that, consistent with current

procedure, all mail not in pre-franked envelopes is returned to the offender with instructions that

the mail must be in pre-franked envelopes.  *Id.*  After investigation, it was learned that Mr.

Kirry's confiscated mail was placed in the C/D CUS's box for review and because the CUS was

away from the facility, a short delay occurred in returning Mr. Kirry's mail to him.  However,

Sgt. Schneider indicated the mail would be returned to him on or around July 16, 2013.  *Id.*, p. 3.

In his level III appeal of this grievance, Mr. Kirry acknowledged that he received "my 4 pieces

---

[3] All references to page numbers are to CM/ECF pagination.

REPORT AND RECOMMENDATION - 3

of legal mail" on July 28, 2013, but after he sent the mail again on June 29, 2013, only his 4 postage transfers were returned to him. *Id.*, p. 5.

DOC Policy 450.100 is the policy governing inmate mail. Dkt. 11-1, Exhibit 3 (DOC Policy 450.100, July 25, 2011 revision date), pp. 12-32.[4] Inmates are responsible for their postage costs. *Id.*, Exhibit 3, p. 25. Inmates will purchase pre-franked envelopes at cost from the facility offender store. These envelopes are pre-paid for First Class, one-ounce letters. Inmates may fill out the appropriate form to transfer money to pay for additional postage costs above the First Class rate. Non-indigent inmates will be allowed to incur a postage debt for outgoing legal mail. *Id.*

Indigent inmates with outgoing mail, including legal mail, may receive postage credit up to the equivalent of 5 first class pre-franked envelopes per week for mailing costs. *Id.*, p. 26. An indigent offender who has used all the postage allowed for mailing legal mail may receive postage equal to fifteen (15) additional first class pre-franked envelopes per week for legal mail, if the inmate can meet the requirements under the policy. *Id.* An inmate is considered indigent if he has less than a ten dollar balance of disposable income in any of his trust fund accounts on the day a request is made to utilize funds and during the 30 days previous to the request. Dkt. 11-1, Exhibit 4 (Glossary Terms for DOC Policy 450.100), p. 34.

**STANDARD OF REVIEW**

A court may grant a motion for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983)

---

[4] *See* note 2 *supra.* Mr. Kirry incorporates a partial copy of DOC Policy 450.100. Exhibit 3 to Defendant's motion is a complete copy of DOC Policy 450.100, which can be found on DOC's webpage.

REPORT AND RECOMMENDATION - 4

1 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).  "Dismissal can be based on the lack of a

2 cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory."

3 *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

4       On a motion to dismiss, material allegations of the complaint are taken as admitted and

5 the complaint is to be liberally construed in favor of the plaintiff.  *Jenkins v. McKeithen*, 395

6 U.S. 411, 421 (1969), *reh'g denied*, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287,

7 1290 (9th Cir. 1977).  Where a plaintiff is proceeding *pro se*, his allegations must be viewed

8 under a less stringent standard than allegations of plaintiffs represented by counsel.  *Haines v.*

9 *Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972).  While the court can liberally

10 construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead.

11 *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of*

12 *University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

13 **DISCUSSION**

14       To state a claim under 42 U.S.C. §1983, at least two elements must be met: (1) the

15 defendant must be a person acting under color of state law, (2) and his conduct must have

16 deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of

17 the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981).  Implicit in the second element is a

18 third element of causation. *See Mt. Healthy City School Dist Bd. of Educ. v. Doyle*, 429 U.S. 274,

19 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S.

20 875 (1980).

21 **A.**    **First Amendment**

22       Mr. Kirry claims that the rejection of his mail because it was placed in non pre-franked

23 envelopes violated his First Amendment right to send mail.  He contends that he did not have any

pre-franked envelopes and could not afford to buy any.  He contends that pursuant to DOC

Policy 450.100, he should have been allowed to use a postage transfer and allowed to incur a

postage debt for his outgoing mail.  He also contends that he did not receive proper notice of his

mail rejection and his mail was never reviewed by the superintendent as required by the mail

policy.  Dkt. 6, pp. 3-4.

Even assuming all of Mr. Kirry's assertions are true, he has failed to state a claim upon

which relief can be granted.  Prisoners have "a First Amendment right to send and receive mail."

*Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  Censorship of prisoner mail is

justified only if "the regulation or practice in question further[s] an important or substantial

governmental interest unrelated to the suppression of expression" and "the limitation of First

Amendment freedoms [is] no greater than is necessary or essential to the protection of the

particular governmental interest involved."  *Procunier v. Martinez*, 416 U.S. 396, 413 (1974),

*overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).

Mr. Kirry alleges that his mail was rejected because he failed to use pre-franked

envelopes. Dkt. 6, p. 3; *see also* Dkt. 11-1, Exhibits 1 and 2.  DOC Policy 450.100 requires

inmates to use pre-franked envelopes and it ensures they are available to indigent and non-

indigent inmates alike.  Dkt. 11-1, Exhibit 3, pp. 25-26.   Defendant Schneider returned all mail

to Mr. Kirry and informed him he needed to use pre-franked envelopes for his outgoing mail.

Dkt. 6, p. 3; Dkt. 11-1, Exhibits 1 and 2.  There is no allegation and the complaint and

attachments reflect that the rejection of Mr. Kirry's mailings were unrelated to the substance of

the mailings.  In fact, Mr. Kirry could have placed all enclosures in pre-franked envelopes and

put them in the facility's outgoing mail.   Instead, Mr. Kirry chose to contest the return of his

mail stating that he did not have pre-franked envelopes to use.  Mr. Kirry's complaint and

REPORT AND RECOMMENDATION - 6

attachments reflect, however, that DOC 450.100 allowed him to receive pre-franked envelopes regardless of whether he was indigent at the time.  Dkt. 11-1, pp. 25-24.  In addition, Mr. Kirry is allowed to receive postage equal to fifteen (15) additional first class pre- franked envelopes per week for legal mail if he meets the requirements set forth in Policy 450.100(XI)(F)(1)(a)-(b).  *id.*, p. 26.

Mr. Kirry was instructed that all inmates must use pre-franked envelopes for outgoing mail.  Mr. Kirry ignored this requirement and continually attempted to send out mail in blank (non pre-franked) envelopes in spite of the fact that each time he did so, his mail was rejected and returned to him.  All Mr. Kirry needed to do was to follow policy, obtain pre-franked envelopes, and send his mail in those envelopes.  Following this simple procedure would have allowed him to send mail out of the facility.

Even assuming all material allegations of Mr. Kirry' complaint as admitted and liberally construing those allegations in favor of Mr. Kirry, Mr. Kirry can prove no set of facts in support of his claim that the rejection of his mail violated his First Amendment rights.

**B.    Qualified Immunity**

Defendant Schneider also contends that she is entitled to qualified immunity because her conduct did not clearly violate Mr. Kirry's constitutional rights.  Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining whether defendants are entitled to qualified immunity, the court makes a two-step inquiry.  First, the court must determine if plaintiff has alleged sufficient facts to show that defendants violated his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court must determine if the right was

REPORT AND RECOMMENDATION - 7

1   clearly established.  *Id.*  This requires the court to determine if it would have been clear to a

2   reasonable officer that his conduct was unlawful in the situation he confronted.  *Id.* at 202.

3   Plaintiff bears the burden of proving that the right was clearly established.  *See Davis v. Scherer*,

4   468 U.S. 183, 197 (1984).  Courts can address these issues in any order.  *Pearson,* 555 U.S. 223

5   (2009).

6          As discussed above, Mr. Kirry has failed to state a constitutional claim.  Therefore,

7   Defendant Schneider is entitled to qualified immunity on that basis.

8

9   **C.     Motion to Stay Discovery**

10          The court has broad discretionary powers to control discovery.  *Little v. City of Seattle*,

11   863 F.2d 681, 685 (9th Cir. 1988).  Upon showing of good cause, the court may deny or limit

12   discovery.  Fed. R. Civ. P. 26(c).  A court may relieve a party of the burdens of discovery while a

13   dispositive motion is pending.  *DiMartini v. Ferrin*, 889 F.2d 922 (9th Cir. 1989), *amended at*

14   906 F.2d 465 (9th Cir. 1990); *Rae v. Union Bank*, 725 F.2d 478 (9th Cir. 1984).  When

15   government officials raise the issue of qualified immunity, discovery should not proceed until

16   this threshold issue is resolved by the court.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

17   *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *DiMartini*, 889 F.2d at 926.

18          Mr. Kirry does not need to engage in discovery to respond to the purely legal arguments

19   made above and the parties should not have to bear the expense of discovery until the Court rules

20   on this motion.  If the Court determines Mr. Kirry has stated a claim for which relief can be

21   granted, Mr. Kirry will be entitled to pursue discovery against the Defendant Schneider.

22   Therefore, the undersigned recommends that discovery be stayed pending resolution of

23   Defendant Schneider's motion to dismiss.

24

25

26

REPORT AND RECOMMENDATION - 8

|**CONCLUSION**

The undersigned recommends that Defendant's motion to dismiss (Dkt. 11) be **Granted** and Plaintiff's claims against Defendant be **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 27, 2014**, as noted in the caption.

**DATED** this  4th  day of June, 2014.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9